UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JARVIS PETERSON,

    Plaintiff,

    v.

EUROMARKET DESIGNS, INC., d/b/a
CRATE AND BARREL,

    Defendant.

No. 04 C 7685
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Jarvis Peterson filed a four-count complaint against Euromarket Designs, Inc., d/b/a Crate and Barrel ("C&B"). Currently before me is C&B's Motion for Summary Judgment. For the reasons that follow, that motion is granted.

### I.  BACKGROUND

Mr. Peterson began working for C&B as a corporate driver in November, 1997. At the time he was hired, Mr. Peterson was 62 years old. He continued working there until he was terminated in February, 2004.

While his supervisors generally believed that Mr. Peterson performed his job well, they did talk to him on occasion about issues such as not talking on assignments, exercising discretion regarding what he overheard, and conduct that was at times unprofessional. Human resources ("HR") also counseled him for a potentially discriminatory remark that some coworkers asserted he made.

Throughout his tenure with C&B, Mr. Peterson orally expressed interest in four other positions within the company. He did not submit an application, resume, or any other written expression of interest for these positions. He also did not ask about the process for applying for

any of the four positions, the requisite qualifications for any of the four positions, or the job duties of any of the four positions. He maintained his original position – corporate driver – throughout his tenure with C&B.

In August, 1998, Mr. Peterson fell down a flight of stairs, and subsequently filed a workers' compensation claim. That claim was paid in full. Mr. Peterson testified in his deposition that he was neither terminated nor threatened with termination after filing that claim.

In March, 2003, Mr. Peterson claims to have suffered an on-the-job injury to his ears. He asserts it occurred after a lifting incident. In December, 2003, he filed a second workers' compensation claim. All of the submitted doctors' bills associated with Mr. Peterson's December, 2003 claim have been paid in full. Mr. Peterson, however, has not further prosecuted the claim.

A few months after filing the second claim, Mr. Peterson was with C&B's CEO, Gordon Segal.[1] Mr. Peterson told Segal that he had a "severe" problem with his ears, and that "69 or 70-year old men should not be required to do heavy lifting." Mr. Peterson also suggested that Segal had been communicating with Mr. Peterson's doctor, Dr. Weingarten, about Mr. Peterson. He accused Segal of trying to get Dr. Weingarten to alter Mr. Peterson's diagnosis and treatment. Segal told Mr. Peterson that he had done no such thing, and that he was shocked by the allegation.

Unsatisfied with Segal's response, Mr. Peterson wrote a complaint about Segal's comments and treatment of him and submitted it to HR. During the investigation into Mr.

---

[1] Part of Mr. Peterson's duties as a corporate driver involved driving the CEO and other senior managers to and from the airport.

2

Peterson's complaint, Mr. Peterson told an HR official that he believed Segal was harassing him because of his most recent workers' compensation complaint. The HR official also spoke with the company's Workers' Compensation and Safety Administrator, Jennifer Fruend. Freund reported that Mr. Peterson had also told her that he thought Dr. Weingarten had changed his treatment as a result of his (Weingarten's) friendship with Segal. She also reported that Mr. Peterson had said on prior occasions that he was not afraid of Segal and that he (Peterson) was bigger than Segal.

Some time after this initial conversation, Freund contacted the HR official again to let her know that Mr. Peterson had repeated his accusations about Segal attempting to influence Dr. Weingarten's treatment of Mr. Peterson. This time, however, Mr. Peterson made the comments to people outside the company: to Dr. Weingarten himself and to an adjuster working for C&B's workers' compensation administrator.

The HR official considered these comments to be grossly insubordinate and lacking in sound judgment. Accordingly, she had a meeting with Mr. Peterson on February 11, 2004, in which she told him that he was being terminated due to insubordination to the head of the company.

Mr. Peterson subsequently filed this action. On June 29, 2005, Mr. Peterson filed his First Amended Complaint. His action now consists of five counts; he alleges: (1) discrimination on the basis of sex; (2) retaliation for opposing the sex discrimination to which he was subjected; (3) discrimination on the basis of age; (4) retaliation for opposing the age discrimination to which he was subjected; and (5) retaliation based on the filing of a workers' compensation claim.

II.     **DISCUSSION**

*A.     Summary Judgment Standard*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986) (stating that summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

*B.     Local Rule 56.1*

All parties before this court are bound by the Local Rules of the United States District Court for the Northern District of Illinois. Local Rule 56.1(b) dictates what a party opposing a motion for summary judgment must do. The rule states:

> Each party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall serve and file—
>
> (1) any opposing affidavits and other materials referred to in Fed.R.Civ.P. 56(e);

4

(2) a supporting memorandum of law; and

(3) a concise response to the movant's statement that shall contain:

> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Local Rule 56.1(b).

In response to C&B's Motion for Summary Judgment, Mr. Peterson filed a handwritten letter entitled "Summary Judgment Answer." He included with that letter a barrage of other materials, including additional handwritten notes and other documents. Mr. Peterson has not, however, filed a memorandum of law, he has not responded to C&B's statement of undisputed material facts, and he has not provided a statement – as defined by the rules – of additional facts of his own.

While Mr. Peterson was represented by counsel when this action commenced, he now represents himself. It is true that I will liberally construe a *pro se* litigant's filings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998) ("The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable."). However, Peterson's *pro se* status

5

does not relieve him of the burdens of this court's procedural requirements. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). Employment discrimination cases are extremely fact-intensive, and I am not "obliged in our adversary system to scour the record looking for factual disputes. . ." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir.1994); *see also Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Further, in accordance with Local Rule 56.2, C&B served Mr. Peterson with a notice to a *pro se* litigant form setting forth in detail Local Rule 56.1's requirements. Thus, Mr. Peterson is expected to comply with Local Rule 56.1. Local Rule 56.1 statements and responses that do not properly cite to the record are subject to my discretion as to their admission. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). None of Mr. Peterson's submissions cite to the record. Moreover, statements that are not contested are deemed admitted. *Brengettcy v. Horton*, 423 F.3d 674, 681 (7th Cir. 2005). As noted, Mr. Peterson failed to refute any of C&B's statements.

C. *Mr. Peterson's Age and Sex Discrimination and Retaliation Claims*

In Counts I through IV, Mr. Peterson complains of discrimination and retaliation based on sex and age. He alleges that C&B discriminated against him both by denying him promotions, and by terminating him.[2]

---

[2] While Mr. Peterson's First Amended Complaint alleges that he was terminated as a result of his age and sex, Mr. Peterson testified in his deposition that he was fired in retaliation for filing his workers' compensation claims, and not as a result of his age or his sex. These age and gender claims are probably lost for this reason alone. Despite this, I will consider the record with regard to them.

6

Mr. Peterson may establish his age and sexual discrimination claims (Counts I through IV) by either direct proof or indirect proof. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). The direct method requires Plaintiff to offer some proof that but for his protected conduct, he would not have suffered an adverse job action. *Stone v. City of Ind. Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002). Mr. Peterson offers no facts whatsoever in response to C&B's Motion for Summary Judgment and therefore fails to satisfy his burden via the direct method.

Under the indirect method, Mr. Peterson must prove four elements to establish a *prima facie* case: (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) he was treated differently than a similarly situated person outside his protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Raymond*, 442 F.3d at 610.

If Mr. Peterson establishes his *prima facie* case, then the burden would shift to C&B to "articulate some legitimate, nondiscriminatory reason" for its termination. *McDonnell Douglas*, 411 U.S. at 802; *Goodwin v. Board of Trustees of Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006). Once C&B does so, Mr. Peterson must show that C&B's justification is pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Goodwin*, 442 F.3d at 617-18.

Again, Mr. Peterson offers no facts whatsoever. Nevertheless, C&B succeeds, at the very least, in establishing that even if Mr. Peterson were able to establish a *prima facie* case, that it had a legitimate, nondiscriminatory reason for terminating him. The disparaging and insubordinate comments that Mr. Peterson made about C&B's CEO Gordon Segal satisfy C&B's burden. It is settled law that "[i]nsubordination is a legitimate, non-discriminatory reason for firing an employee." *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999); *accord*

*Plair v. E.J. Brach & Sons*, 105 F.3d 343, 345 (7th Cir. 1997). While Mr. Peterson theoretically could defeat summary judgment by proving that this reason was mere pretext, *Goodwin*, 442 F.3d at 617-18, he fails to do that here. Accordingly, summary judgment is proper against Mr. Peterson on Counts I through IV.

D.    *Mr. Peterson's Claim for Retaliatory Discharge – Workers' Compensation*

In Count V of his First Amended Complaint, Mr. Peterson alleges that he was terminated as a result of filing his workers' compensation claims. Under Illinois law, "[a] valid claim for retaliatory discharge requires a showing that (1) an employee has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (*citing Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (1992)). "In the workers' compensation context, a plaintiff must show (1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim." *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994) (*citing Kritzen v. Flender Corp.*, 589 N.E.2d 909, 915 (1992)). Illinois courts also hold that "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein*, 601 N.E.2d at 728.

Irrespective of whether Mr. Peterson's claim is evaluated under the standards set forth by Illinois courts or under the *McDonnell Douglas* burden shifting analysis,[3] the result is the same.

---

[3] It is unclear whether the *McDonnell Douglas* burden shifting analysis should be applied to a claim for retaliatory discharge under Illinois law. "[T]he Supreme Court of Illinois expressly rejected the application of *McDonnell Douglas* to Illinois retaliatory-discharge cases in *Clemons*

8

Either way, C&B has established a valid, non-pretextual reason for terminating Mr. Peterson, to wit, the insubordinate comments Mr. Peterson made about C&B's CEO in and outside of the company. Mr. Peterson does not deny making these statements. Therefore, summary judgment is appropriate against Mr. Peterson on Count V.

## III. CONCLUSION

For the preceding reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 1, 2006

---

*v. Mech. Devices Co.*, 184 Ill.2d 328, 235 Ill.Dec. 54, 704 N.E.2d 403, 407-08 (1998)." *Bourbon*, 223 F.3d at 474 (Posner, J., concurring). The Seventh Circuit has nevertheless held that "Illinois retaliatory discharge cases brought in federal court may be analyzed using the burden-shifting method presented in *McDonnell Douglas*," rather than the approach outlined by the Illinois courts. (*Id.* at 473 citing *Hiatt*, 26 F.3d at 767). The question is purely academic for purposes of this case, however, as the result is the same either way.